UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR L. JORDAN,<br><br>               Plaintiff,<br>  v.<br><br>PATRICIA SALTZMANN, CSW; SCOTT MUELLER, Dr., PSYD; EDWARD GONZALEZ, LCSW; and MATHEW CLARK, LPC ,<br><br>               Defendants. | Civil Action No.<br>No. 3:21-cv-560 (CSH)<br><br>NOVEMBER 10, 2022 |

**OMNIBUS RULING ON PENDING MOTIONS**

**HAIGHT, Senior District Judge**

## I.  INTRODUCTION

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Victor Jordan, currently incarcerated at Garner Correctional Institution ("Garner"), alleges that various constitutional violations were committed against him by defendant state employees at Northern Correctional Center  ("Northern"), where he was previously housed.[1]  At the present time, Defendants have moved to dismiss Plaintiff's action in its entirety.  *See* Doc. 31 ("Request for Dismissal of the Case").  Plaintiff has "moved" to notify the Court that Defendants have failed to provide him with a copy of Defendants' motion to dismiss, rendering him unable to file a substantive

---

[1] According to the Connecticut Department of Correction ("D.O.C.") website, Jordan is a "sentenced" inmate for the "controlling offense" of "sale of hallucinogenic/narcotic substance." http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=165080.  His "latest admission date" to prison was "4/17/2008," his "maximum sentence" received was "81 years," and his maximum release date is "8/15/2088." *Id.*

response. Doc. 34 (Plaintiff's "Motion to Give Notice to Court"). Finally Plaintiff has moved to disqualify the Attorney General's Office from representing Defendants in this action. Doc. 26. The Court will resolve the three motions [Doc. 26, 31, 34] herein.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss [Doc. 31]

The sole basis for Defendants' requested dismissal of Plaintiff's case is his failure to file an amended complaint by July 28, 2022, as mandated by the Court's "Ruling and Order," dated June 28, 2022, and entered by then-presiding Judge Covello.[2] Doc. 31, ¶¶ 3-5. In that order, Judge Covello ruled that Plaintiff's Complaint was dismissed for failure to comply with Rule 8, Fed. R. Civ. P., but that the case would remain open till the June 28 deadline to allow Plaintiff an opportunity to amend. Doc. 20, at 27-28. Plaintiff never amended his Complaint in this action.

However, as noted on the case docket, on July 22, 2022, Judge Covello's Ruling [Doc. 20], was retracted as "entered in error" because that ruling actually pertained to another case filed by Plaintiff.[3] Upon retraction of the Ruling, the prior "Initial Review Order" ("IRO") [Doc. 9] was revived as the *de facto* operative ruling with respect to the Complaint. In the IRO, Judge Covello had screened Plaintiff's claims pursuant to 28 U.S.C. § 1915A(b) and ruled:

> The Eighth Amendment sexual abuse claim and the Fourth Amendment bodily privacy claim will proceed against CSW [Clinical Social Worker] Patricia Saltzmann, in her individual capacity, and the Eighth Amendment deliberate indifference to mental health needs claim will proceed against CSW Patricia

---

[2] The case at bar was transferred from Judge Covello to me on September 27, 2022. Doc. 27.

[3] Judge Covello then filed his "Ruling and Order" [Doc. 20] in the proper case. *See Jordan v. Dep't of Corrections*, 3:22-cv-00701 (CSH), Doc. 13 (filed 07/22/2022, with the notation "Ruling was previously incorrectly entered in 21cv560.").

>Saltzmann, Dr. Scott Mueller, LCSW [Licensed Clinical Social Worker] Edward Gonzalez and LPC [Licensed Professional Counselor] Mathew Clark, in their individual capacities.

Doc. 9, at 25. Accordingly, the above claims remain pending. Defendants' "Request for Dismissal" [ Doc. 31], based on an erroneously-filed, retracted Ruling, will be denied as inapposite.

## B. Plaintiff's Motion to Give Notice to Court [Doc. 34]

In his self-styled "Motion to Give Notice to Court" [Doc. 34], Plaintiff seeks to inform the Court that he did not receive a copy of the Defendants' "Request for Dismissal" [Doc. 31]. He states that absent receipt of that document, he has been unable to file a comprehensive response – one addressing the "grounds" for the Defendants' motion. Doc. 34, at 1-2. Moreover, he asserts that the Attorney General's Office has engaged in "dirty tactics" to hamper his ability to prosecute his case (*e.g.*, by "fail[ing] to fully disclose materials that relate to this case" and/or filing a "premature motion to dismiss"). *Id.* at 2. Plaintiff thus requests that the Court take "notice [of] the tactics by the A.G.'s Office," "rectify" the situation, and "stay any response" deadline for Defendants' motion. *Id.*

The Court finds no basis to conclude that Defendants have engaged in intentional misconduct with respect to service of pleadings. Rather, in filing the instant "Request for Dismissal," Assistant Attorney General Matthew B. Beizer explicitly certified that on October 6, 2022, "[a] copy of the foregoing was mailed by first class postage prepaid to: Victor Lamond Jordan #165080, Garner Correctional, 50 Nunnawauk Road, P.O. Box 5500, Newtown, CT 06470." Doc. 31, at 2. That address indeed matches Plaintiff's current address of record on the case docket.

If Jordan did not receive a copy of Defendants' filing, it is possible that the Garner mail system failed to deliver it to him, either inadvertently or through screening procedures in Restrictive

3

Housing or solitary confinement.[4] After all, Plaintiff states in his motion that he was "placed in RHU [Restrictive Housing Unit] without access to his legal materials." Doc. 34, at 1. Furthermore, he previously informed the Court that while he was "in solitary confinement" in early October 2022, he had "no access to his property" and could access "only a fraction of his legal materials." Doc. 32-1, at 2.

Because Defendants' motion to dismiss will be denied in this Ruling, Plaintiff's motion regarding lack of notice thereof will be denied as moot. However, as to the accusatory language contained in Plaintiff's motion, he is hereby advised that civility must be maintained in addressing opposing counsel. Unwarranted censure and *ad hominem* attacks are inappropriate in these proceedings. Such insults may give rise to hostility and recriminations, thereby impeding expeditious resolution of the case. Absent tangible proof of misconduct, Plaintiff should cease making such accusations.

## C. Plaintiff's Motion to Disqualify the Attorney General's Office [Doc. 26]

In addition to his motion to give notice, Plaintiff moves for the disqualification of the

---

[4] The Court queries how – if Plaintiff has not received a copy of Defendants' motion to dismiss and truly has no "access to a computer to check and review [his case] through [the] Court[']s] electronic filing system" – he has discovered that Defendants filed such a motion. Doc. 34, at 1.

Furthermore, there have been two documents filed as "Plaintiff's Objection to Defendants' Motion to Dismiss." Doc. 32. The first such document was filed in error. That document was a sealed "Reply to Probate and Police Defendants['] Objection to [Two] Motions to Compel" in an unrelated action, *Kenneson v. Vaccarelli*, No. 3:20cv1482 (JBA). That sealed pleading was then replaced by Plaintiff's handwritten "Motion to Object to Defendants' Motion to Dismiss," which was actually Plaintiff's objection that he had not been "able to access his legal materials" while was in "solitary confinement," "refusing a cell partner for safety and security reason[s] and health." Doc. 32-1, at 2. As in his "Motion to Give Notice," Plaintiff stated that he had "yet to receive Defendants' Motion to Dismiss" so was unaware of its "grounds" and possibly in need of a "stay" of the proceedings to have "time to respond." *Id.* at 2-3.

Attorney General's Office as counsel for Defendants in this action. Doc. 26. Disqualification of counsel is a remedy that serves to "enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation*, 518 F.2d 751, 754 (2d Cir.1975) (citation and internal quotation marks omitted). *See also Rodriguez v. City of New Haven*, 214 F.R.D. 66, 68 (D. Conn. 2003) (same). However, motions for disqualification are generally disfavored by the Second Circuit and are subjected to a high standard of proof due to the hardship disqualification may inflict on a client, who should have the right to select counsel, *Gov't of India v. Cook Indus.*, Inc., 569 F.2d 737, 739 (2d Cir. 1978), and the fact that disqualification is often interposed as a litigation tactic, *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791–92 (2d Cir.1983). In assessing "disqualification matters [the court] must be solicitous of a client's right freely to choose his counsel" – "a right which of course must be balanced against the need to maintain the highest standards of the profession." *Gov't of India.*, 569 F.2d at 739 (citations omitted). "A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel[,] who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation." *Id.*

"Disqualification is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). It thus follows that although federal courts may "look to state disciplinary rules when considering motions for disqualification, such rules need not be rigidly applied as they merely provide general guidance." *Id.* (citation and internal quotation marks omitted). "Even a violation of disciplinary rules may not warrant disqualification." *Id.* (citation and internal quotation marks omitted).

In the case at bar, in support of his motion for disqualification, Plaintiff argues that the Defendants remaining in the action – Saltzmann, Mueller, Gonzalez, and Clark – are currently being sued in their *individual* capacities so that the state has no interest in these proceedings. Doc. 26, at 2. By the terms of the IRO, the Court solely allowed claims to proceed against Defendants in their *individual*, as opposed to their *official*, capacities. Doc. 9, at 17, 19, 21, 25. In addition, "two [of the] Defendants, Saltzmann and Gonzalez, are no longer employed by the D.O.C." Doc. 26, at 2.

Plaintiff cites Connecticut General Statutes § 3-125 as the statutory authority which prescribes the Attorney General's role in representing state employees. Doc. 26, at 3. That statute, as quoted by Plaintiff, states that "[t]he Attorney General shall have general supervision over all legal matters in which the state is an interested party . . . [and] shall appear for . . . all heads of departments and state boards, commissioners, agents . . . in all suits and other civil proceedings . . . in which the state is a party or is interested, or in which the official acts and doings of said officers are called into question . . . ." *Id.* (quoting Conn. Gen. Stat. § 3-125). From this language, Plaintiff concludes that the Attorney General's Office should only represent *current* state employees in their official capacities. The Attorney General's Office should thus be barred from representing Defendants, who are no longer state employees and/or are not being sued in their official capacities. *Id.* In Plaintiff's opinion, the state no longer has an interest in such defendants.[5] *Id.* at 2-3.

However, Plaintiff fails to take into account Conn. Gen. Stat. § 5-141d, which "authorizes the indemnification of state employees under certain circumstances." *Mangiafico v. Blumenthal*, 471 F.3d 391, 392 (2d Cir. 2006). That statute, captioned "Indemnification of state officers and

---

[5] To bolster his argument for disqualification, Plaintiff erroneously asserts that unless the state is the plaintiff, as the true party in interest, the Attorney General's Office should be barred from providing representation. Doc. 26, at 1-2.

employees [–] Duties of Attorney General," provides:

> The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which *occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment*, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing.

Conn. Gen. Stat. § 5-141d (b) (emphasis added).

In the case at bar, all of Plaintiff's claims arise out of Defendants' acts or omissions which allegedly occurred in the discharge of their duties or in the scope of their state employment. In addition, per § 5-141d, the Court infers that after performing the required "investigation of the facts and circumstances of the case," the Attorney General's Office elected to represent the Defendants in this action.[6] Consequently, Assistant Attorney General Beizer entered an appearance on Defendants' behalf on May 11, 2022. Doc. 16. In such circumstances, "the government attorney is serving as an advocate of the state, determining whether to commit the state's resources, reputation, and prestige to litigation." *Mangiafico*, 471 F.3d at 396. The Second Circuit has held that such a discretionary decision is protected by "absolute immunity" from liability. *Id.* at 397. If the Connecticut citizenry disapprove of the Attorney General's decisions in this regard, they may vote him out of office. *Mangiafico v. Blumenthal,* 358 F. Supp. 2d 6, 26 (D. Conn. 2005), *aff'd*, 471 F.3d

---

[6] "Section 5-141d ... evinces the legislature's intent that the state indemnify and defend any officer or employee sued for negligent conduct occurring in the course of his or her employment." *Hunte v. Blumenthal*, 238 Conn. 146, 151 (1996). Therefore, if, for example, a plaintiff alleges "wanton, reckless, or malicious conduct by the state official or employee," pursuant to Conn. Gen. Stat. § 5-141d, the Attorney General "has discretion whether to defend that person and the state will not legally be required to indemnify him or her if those allegations are proven. *See Devine v. Fusaro*, 205 Conn. App. 554, 583 n. 22 (2021) (citations omitted).

391 (2d Cir. 2006). This Court will deny Plaintiff's motion to disqualify the Attorney General's Office as counsel for Defendants.

### III. CONCLUSIONS

For the reasons discussed above, Defendants' "Request for Dismissal of the Case" [Doc. 31], Plaintiff's "Motion to Give Notice to Court" [Doc. 34], and Plaintiff's "Motion to Disqualify [the] Attorney General's Office" [Doc. 26] are all DENIED.

In addition, there remain two motions on the case docket: Plaintiff's "Motion to Compel" [Doc. 22], filed on July 25, 2022, which thus predates case transfer, and Plaintiff's "Motion to Consent to Magistrate Judge [for a] Settlement Conference" [Doc. 35], filed November 9, 2022.[7] Defendants are hereby ORDERED to report back to the Court on or before **November 21, 2022,** to indicate whether they consent to Plaintiff's requested referral of the case to a Magistrate Judge for purposes of a settlement conference. If they consent, the referral will be made to a Magistrate Judge and Plaintiff's "Motion to Compel" [Doc. 22] will be denied without prejudice to renewal in the event settlement negotiations fail.

However, if Defendants resist Plaintiff's request for a settlement conference, they must confer with Plaintiff regarding the outstanding discovery disputes in the case – *i.e.*, those underlying Plaintiff's "Motion to Compel" [Doc. 22] – and report back to the Court regarding their progress on or before **November 30, 2022.** If the parties do not jointly consent to participating in a settlement conference and are unable to resolve their discovery disputes, the Court will refer the

---

[7] In his "Motion to Consent to Magistrate Judge," Plaintiff expressly states that he "consent[s] to [a] Magistrate Judge being appointed to reside [sic] over [the case] for said purpose" of settlement. Doc. 35, at 1. Moreover, he "is willing to listen and/or compromise on a settlement prior to a jury trial." *Id.* at 2.

8

case to a Magistrate Judge to assist the parties with discovery.

The Clerk is directed to mail a copy of this "Omnibus Ruling" and a copy of the Defendants' "Request for Dismissal" [Doc. 31], which Plaintiff maintains he did not receive, to Plaintiff at his address of record.

It is SO ORDERED.

Dated: New Haven, Connecticut
November 10, 2022

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge