**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VICTOR LAMOND JORDAN, SR.<br><br>Plaintiff,<br><br>v.<br><br>PATRICIA SALTZMAN, ET AL.,<br><br>Defendants | No. 3:21-cv-00560-MPS |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

Plaintiff Victor Lamond Jordan, Sr. ("Jordan") commenced this action *pro se* by filing a Complaint against employees of the Connecticut Department of Corrections bringing constitutional claims under 42 U.S.C. § 1983. After Judge Covello issued an Initial Review Order that dismissed some of Jordan's claims but allowed others to survive, the Court appointed Jordan pro bono counsel.

The Defendants have moved for summary judgment as to Jordan's Fourth Amendment bodily privacy claim against Defendant Saltzman and his Eighth Amendment deliberate indifference claim against Defendants Saltzman, Mueller, Gonzalez, and Clark. As set forth more fully below, the motion is GRANTED IN PART and DENIED IN PART.

## II. Factual and Procedural History

### A. Factual Background

The following facts are taken from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise indicated. I discuss only those facts necessary to decide Defendants' motion.

The events giving rise to Jordan's claims occurred when Jordan was incarcerated at Northern Correctional Institution ("Northern"), in Somers, Connecticut. ECF No. 95-1 ¶ 1. The Department of Correction employed Defendants Patricia Saltzman, Dr. Scott Mueller, Edward Gonzalez, and Matthew Clark as mental health workers at Northern. *Id* ¶ 2. Defendants Saltzman and Gonzalez were Licensed Clinical Social Workers; Defendant Clark was a Licensed Professional Counselor; and Defendant Mueller was a psychologist who supervised Saltzman, Gonzalez, and Clark. ECF No. 86-5 at 1. Most days, Defendants Saltzman or Clark would tour the facility to determine if inmates needed mental health services. ECF No. 95-1 ¶ 5. During these tours, mental health staff would address an inmate's mental health needs by conducting "cell-side" consultations.[1] *Id.* ¶ 6; ECF No. 86-6 at 1 (summary of Jordan's treatment for August 1, 2020 to October 5, 2020). Northern mental health staff also scheduled out-of-cell consultations. ECF No. 95-1 ¶ 7.[2] Gonzalez was Jordan's assigned mental health counselor,[3] and saw Jordan frequently and routinely, although Jordan was treated on numerous occasions by Saltzman and Clark as well. *Id.* ¶¶ 11–14. In addition, Jordan was prescribed, and routinely provided, a number of mental health prescriptions. *Id.* ¶ 16.

Plaintiff alleges that during his "cell-side" mental health consultations, Saltzman encouraged him to masturbate in front of her. *Id.* ¶ 18; ECF No. 86-12 at 53–66. Jordan alleges that Saltzman would "talk dirty" to him and that he complied with her requests for him to masturbate in front of her on approximately thirty occasions beginning in February 2020. ECF Nos. 86-12 at 53–66; 95-10 at 2. Jordan alleges that he became uncomfortable with the relationship

[1] Jordan contends that he "repeatedly requested mental health services from Defendant Saltzman, but did not consistently receive those services even when she was present in his unit." ECF No. 95-1 ¶ 6.
[2] Jordan contends that he "repeatedly requested out-of-cell consultations with Defendant Saltzman, but his requests were not consistently honored." ECF No. 95-1 ¶ 7.
[3] Plaintiff contends he was first assigned to Clark and then Gonzalez. ECF No. 95-1 ¶ 11.

and ended it in July 2020. ECF No. 86-12 at 54. During and after this period, Jordan suffered from mental health issues and complained about the inadequacy of the mental healthcare and the treatment he received at Northern. ECF No. 95-1 at ¶¶ 5–7, 12, 15, 30, Statement of Additional Material Facts ¶ 3.

On August 7, 2020, Jordan made the allegation to Defendant Gonzalez that he had engaged in a sexual relationship with Saltzman. *Id.* ¶ 17. Defendants assert that they did not believe the allegation, *id.* ¶ 19, although Gonzalez testified that he did not know whether it was possible for Saltzman to have had a romantic relationship with an inmate and "didn't know at the time whether or not what Mr. Jordan was saying was true." ECF No. 95-4 at 12. Nonetheless, Northern staff initiated an investigation into Jordan's allegations and referred the matter to the Department of Corrections Prison Rape Elimination Act ("PREA") unit. ECF No. 95-1 ¶ 22. PREA concluded that Jordan's allegations were unfounded. *Id.* ¶ 26. Following Jordan's report concerning Saltzman, Mueller decided to limit Saltzman's interaction with Jordan, but Saltzman did continue occasionally to provide mental health services to Jordan. *Id.* ¶¶ 28–29.

**B. Procedural History**

In April 2021, Jordan filed a *pro se* complaint against various employees of the Connecticut Department of Corrections bringing constitutional claims under 42 U.S.C. § 1983 arising from his alleged inappropriate and abusive sexual relationship with Saltzman. ECF No. 1.

Judge Covello's Initial Review Order permitted three claims to proceed: (1) an Eighth Amendment sexual abuse claim against Saltzman in her individual capacity; (2) a Fourth Amendment bodily privacy claim against Saltzman in her individual capacity; and (3) an Eighth Amendment deliberate indifference to mental health needs claim against Saltzman, Mueller, Gonzalez, and Clark, in their individual capacities. ECF No. 9 at 25 ("The following claims will

**PROCEED**: The Eighth Amendment sexual abuse claim and the Fourth Amendment bodily privacy claim will proceed against CSW Patricia Saltzman, in her individual capacity, and the Eighth Amendment deliberate indifference to mental health needs claim will proceed against LCSW Patricia Saltzman, Dr. Scott Mueller, LCSW Edward Gonzalez and LPC Matthew Clark, in their individual capacities.").

Defendants have moved for summary judgment on the Fourth Amendment bodily privacy claim against Saltzman and the Eighth Amendment deliberate indifference claim against Saltzman, Mueller, Gonzalez, and Clark.[4]

## III. Legal Standard

### A. Summary Judgment

Summary judgment will be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary

[4] In their motion for summary judgment, Defendants erroneously contend that because of the Initial Review Order, only "two distinct claims remain: (1) an Eighth Amendment deliberate indifference to mental health needs claim against Patricia Saltzman, Dr. Mueller, Edward Gonzalez, and Matthew Clark . . . And, (2): a Fourth Amendment right to bodily privacy claim against Defendant Saltzman." ECF No. 86-2 at 7. Defendants moved for summary judgment on these two claims, and these two claims only. *Id.* at 10–18 (briefing deliberate indifference claim and qualified immunity defense to that claim); *id.* at 19–24 (briefing Fourth Amendment claim). While Defendants' motion says that they "move for Summary Judgment on the entirety of the plaintiff's Complaint," ECF No. 86 at 1, they fail to even mention in their brief the Eighth Amendment sexual abuse claim against Saltzman. Despite Jordan's mentioning the claim in his opposition to Defendants' motion, ECF No. 95 at 6 ("The IRO allowed Plaintiff's Eighth Amendment sexual abuse and Fourth Amendment invasion of bodily privacy claims to proceed"), Defendants doubled down on their erroneous reading of the Initial Review Order in their reply and again failed to brief the Eighth Amendment sexual abuse claim. ECF No. 97 (briefing only the Eighth Amendment mental health indifference claim and the Fourth Amendment claim). Accordingly, Defendants have forfeited their opportunity to move for summary judgment on the Eighth Amendment sexual abuse claim against Saltzman, and that claim will proceed to trial. *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) ("Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate."); *Garcia v. Sistarenik*, 603 F. App'x 61, 63 (2d Cir. 2015) (failing to raise argument in motion for summary judgment results in forfeiture even if argument is raised in reply brief).

judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). It is the movant's burden to "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

**B. Qualified Immunity**

"The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The doctrine protects officials who act in ways they reasonably believe to be lawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (internal citations and quotation marks omitted). A right is clearly established if "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Id.* (internal quotation marks and alterations omitted). Even when a right is clearly established, a defendant is not liable if "he objectively and reasonably believed that he was acting lawfully." *Id.*

## IV. Discussion

### A. Fourth Amendment Bodily Privacy Claim Against LCSW Patricia Saltzman

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). "Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on the inmate's fourth amendment rights." *Id.* (internal quotation marks and changes omitted).

Defendants acknowledge that "if there was actual evidence that Ms. Saltzman encouraged Inmate Jordan to masturbate and/or expose his genitals for her viewing satisfaction, then that would sufficiently state a viable claim under the Fourth Amendment." ECF No. 86-2 at 19.

Jordan has pointed to such "actual evidence." Specifically, Jordan testified that he masturbated in front of Saltzman, "with her consent and encouragement" "over 30 times." ECF No. 86-12 at 53:10–59:3. *See also id.* at 60:9–14 (testifying that Saltzman "would encourage me, like, everything was okay and I was, like, I don't feel like this is going right, and she would just say, no, it's all right, it's okay. We -- this is – there's nothing wrong with this."). Before filing suit, Jordan also made a similar statement to LCSW Edward Gonzalez, who documented in a medical note his statement that "[i]n the past she has watched me masturbate, while we were making sexual conversation. This happened many times in the past four months. I stopped engaging with her in sexual activities for over a month now." ECF No. 88 at 70. Jordan also authored a grievance and a sworn declaration describing the same events. ECF No. 95-10 at 2 (describing "inappropriate sexual relationship between myself and social worker Patricia (Patty) Saltzman, who for five months allowed me to masturbate and talk dirty sexual talk to her."); ECF No. 95-11 at 2 ("[S]ocial

worker Patricia Saltzman has allowed me to masturbate to her and talk dirty (sexually) . . . She has allowed me to ejaculate on a number of occasions . . . but now that I have refused [to] show her my penis"). Saltzman denies these allegations – also in a sworn statement – as "completely false and offensive," ECF No. 86-3 at 3, but Jordan's statements, by themselves, are sufficient to resist summary judgment, because the Court cannot "take a side at the summary judgment stage" on "question[s] of 'he said, she said.'" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). *See also Tarullo v. Def. Cont. Audit Agency*, 600 F. Supp. 2d 352, 360 (D. Conn. 2009) ("Essentially, this is a he-said, she-said situation. On summary judgment, the Court must resolve such a conflict by accepting as true the nonmovant's, i.e., the Plaintiff's, version of the facts."); *White v. Doe*, 2021 WL 4034164, at *1 (D. Conn. September 3, 2021) (denying summary judgment on Fourth Amendment bodily privacy claim in "'he said, she said' case involving a male prisoner and a female prison guard" accused of forcing inmate to masturbate in front of her).

Further, beyond his own statements, Jordan has proffered at least two types of additional evidence that either support his allegations or raise questions about Saltzman's credibility. First, a declaration by Jason Goode, Jordan's cell neighbor, states that "on multiple times in the year of 2020 I overheard mental health clinical Patrica Saltzman engage in sexual content discussions involving masturbation, sometimes with its potential health benefits, with Victor Jordan. Other conversations revolved around oral sex with curious ensuing laughter between the two." ECF No. 95-6 at 2.[5] Defendants' only response to the Goode declaration is to point out it does not confirm Jordan's allegation that he had "over 30" sexual encounters with Saltzman. ECF No. 97 at 4. Perhaps not – the declaration does not specify how many "multiple times" means – but it does

[5] The Court need not resolve the parties' disagreement about the admissibility of the declarations of Carmelo Silva and Miguel Mujica to rule on the motion for summary judgment and declines to do so.

provide some support for Jordan's allegations that Saltzman encouraged him to masturbate and otherwise engaged in sexual discussions with him. Defendants also point out that Goode does not report actually witnessing a sexual encounter between Jordan and Defendant Saltzman, and assert – with no supporting evidence – that he would have had the "best view" of any such encounters. *Id.* But the limitations in Goode's affidavit do not alter the reality that it is independent evidence that at least partially corroborates Jordan's version of events.

Jordan has also submitted evidence that challenges Defendant Saltzman's version of events. Saltzman testified that she wrote Jordan multiple public indecency tickets for having his hands out of view at his cell window or putting his hands down his pants, which she believed meant he was masturbating. ECF No. 99 at 104:22–105:19 ("Q: Did he ever attempt to masturbate in your presence? A: Yes.…any time that he would refuse to put his hands on the window, they were usually lower and I would write him a ticket for indecent -- public indecency."); *id.* at 110:16–111:1 ("A: …he would step back from the window and put his hand down his pants. Q: And you would then write him up for public indecency? A: Correct. Q: For having seen him put his hands down his pants? A: Correct. Q: And because you believed when he was doing that he was masturbating? A: Correct."). Saltzman testified that she couldn't specifically remember how many times she issued public indecency tickets to Jordan, but it was "under 20." *Id.* at 105:24–106:6. *See also id.* at 109:22–111:1. Saltzman testified that she consistently wrote public indecency tickets whenever inmates masturbated in her presence and that all tickets were "on file" and given "straight" to "the lieutenant on duty." *Id.* at 109:9–21. But after the deposition, Defendants reported that "despite diligent search, the defendants have not been able to specifically identify, or locate, the public indecency reports written by Defendant Saltzman for the plaintiff." ECF No. 95-9 at 2. While there may be an innocent explanation, the missing public indecency tickets raise at

least a question about the credibility of Saltzman's testimony, one that a reasonable juror might find also affected the credibility of her account that she did not engage in the behavior Jordan accuses her of.

Defendants argue that summary judgment is appropriate because "no reasonable person could believe [Jordan]'s unsupported allegations." ECF No. 86-2 at 19. They rely on *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005), in which the Second Circuit affirmed the district court's grant of summary judgment because the plaintiff relied almost entirely on his own "contradictory and incomplete" testimony. In that case, the plaintiff alleged that police officers had beaten him unconscious and thrown him out of a third-floor window, but "on at least three [previous] occasions he confessed to having jumped out of the third-story window," and he made no mention of any police beatings in his written confession or related criminal proceedings. *Id.* at 551–52. Further, the plaintiff was unable to recall anything about the appearance or number of officers who supposedly beat and defenestrated him, and the medical personnel who treated him found no evidence of any head trauma consistent with his version of events. *Id.* at 552–53. All the plaintiff offered to substantiate his account were statements from his aunt and the mother of his son to the effect that he had previously told them he was attacked and thrown out of a window by police. *Id.* at 552. The Second Circuit found summary judgment appropriate because there was "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony," and even "drawing all inferences in the light most favorable to the plaintiff, … no reasonable person could believe [his] testimony." *Id.* at 555.

*Jeffreys* is a narrow exception to the general rule that credibility determinations are "within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Jeffreys,* 426 F.3d at 554 (describing the case as involving "the rare circumstance

where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete"); *Frost v. New York City Police Dep't*, 980 F.3d 231, 246 (2d Cir. 2020) ("the *Jeffreys* exception is narrow, and it applies only 'in the rare circumstance where' a witness's testimony is so problematic that no reasonable juror could credit it."). The *Jeffreys* exception applies only where "a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011).

This is not the "rare" case that warrants application of the narrow exception recognized in *Jeffreys*. Unlike in *Jeffreys,* where the plaintiff's testimony was "largely unsubstantiated by any other direct evidence" and "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint," 426 F.3d at 555, Jordan's statements in his deposition testimony, medical notes authored by his clinician, and sworn declarations are all consistent. And his allegations are substantiated by Goode's declaration and the missing public indecency tickets.

Defendants make much of the fact that although Jordan made numerous preservation requests for video from dates spanning the period of alleged sexual abuse, none of these requests pertained to his allegations here and none of the requested video excerpts support them. It will be for a jury to decide how much weight to give this fact, but it is not a basis for summary judgment. First, as Jordan points out, it is at least questionable whether video cameras in the hallways would have captured what Jordan was doing inside his cell, at least based on the camera position included in the record. ECF No. 95 at 19. Second, there is no evidence in the record about the specific dates and times at which the alleged abuse occurred, and so the absence of footage corroborating Jordan's story does not show that he was lying. In short, Defendants do not contend that the video

evidence *contradicts* Jordan's allegations, and so the video evidence is not a basis for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Linton v. Zorn*, 135 F.4th 19, 37 (2d Cir. 2025) ("Although video evidence may be credited over a non-movant's account if the video 'blatantly contradicts' that account, we do not think that is the case here. …We therefore leave the resolution of this question, if necessary, to the finder of fact at trial.") (internal citation omitted). Defendants argue essentially that because Jordan is a litigious inmate and has made a salacious allegation against a DOC employee, and because none of the video footage he has requested supports his allegations, I should grant summary judgment in their favor. ECF No. 86-2 at 20–23. Doing so here would be reversible error, however, because Jordan's consistent deposition testimony and other statements, as well as sworn declarations from another inmate, support his version of events, and there is some evidence – the missing tickets – that raises questions about Saltzman's version.

Accordingly, Jordan's Fourth Amendment bodily privacy claim against Patricia Saltzman in her individual capacity shall proceed to trial.[6]

**B. Eighth Amendment Deliberate Indifference to Mental Health Needs Claim Against LCSW Patricia Saltzman, Dr. Scott Mueller, LCSW Edward Gonzalez and LPC Matthew Clark**

The Eighth Amendment forbids "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[P]sychiatric or mental health care is an integral part of medical care. It thus falls within the requirement of *Estelle v. Gamble*, *supra,* that

[6] Defendants do not raise a qualified immunity defense to Jordan's Fourth Amendment bodily privacy claim against Saltzman, likely because it would be futile. *See White v. Doe*, 2021 WL 4034164, at *6–7 (D. Conn. Sept. 3, 2021) (surveying Second Circuit and other federal appeals court decisions and finding that "any objectively reasonable correctional officer would have understood as of January 2014 that it violates a prisoner's Fourth Amendment right to force a prisoner to engage in masturbation to gratify the officer or humiliate the prisoner.").

it must be provided to prisoners." *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989). But "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). To establish a claim for deliberate indifference to a serious medical or mental health need, the plaintiff must put forth evidence to satisfy two elements.

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotation marks omitted). Under this objective element, a court must first determine "whether the prisoner was actually deprived of adequate medical [or mental health] care," and second, "whether the inadequacy in medical [or mental health] care is sufficiently serious." *Id.* at 279–80. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* at 280. "[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.*

The second element is subjective: "the charged official must act with a sufficiently culpable state of mind." *Id.* "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal citation omitted). "[R]ecklessness entails more than mere negligence," *id.,* "even if it constitutes medical malpractice." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "It is well-

established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* To satisfy the subjective element, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05.

**i. There Exist No Genuine Disputes of Material Fact**

Jordan does not dispute that he received mental healthcare during and after the period in which he alleges the sexual abuse occurred, including after he reported the abuse.[7] Jordan received mental health treatment via both cell-side and out-of-cell consultations. ECF Nos. 95-1 ¶¶ 6–7; 86-6 at 1 (summary of Jordan's treatment for August 1, 2020 to October 5, 2020); 88 at 54–90 (showing near-daily "cell-side" mental health consultations in August 2020 after August 7). Jordan's assigned mental health counselor, Gonzalez, treated him "frequently and routinely," and Jordan was also treated by Saltzman and Clark. ECF No. 95-1 ¶ 14 ("it is undisputed that Defendants Gonzalez, Saltzman, and Clark were responsible for logging numerous entries in Plaintiff's mental health records between January and October 2020."). Jordan was also prescribed, and routinely provided, mental health medication. *Id.* ¶ 16. ("The plaintiff was prescribed, and routinely provided, a number of mental health prescriptions. Response: Undisputed."). Jordan takes issue with the fact that Defendants "continued to counsel" Jordan after he disclosed that Saltzman had sexually abused him rather than referring him to an outside provider, and on that basis argues that his care was inadequate. ECF No. 95 at 22. But "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate,

[7] Jordan disputes that he "received the same level of mental health treatment after making his allegations regarding Defendant Saltzman," ECF No. 95-1 ¶ 30, but his medical records show that he received frequent treatment after making his claim on August 7, 2020. *See, e.g.,* ECF No. 88 at 54–90 (showing almost daily mental health "encounters" in August 2020 after August 7).

the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Because the summary judgment standard requires the Court to "construe the facts in the light most favorable to the non-moving party," *Caronia*, 715 F.3d at 427, I must "disregard any disputed facts or facts that contradict [the plaintiff's] version of the events." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003). Therefore, when analyzing Jordan's deliberate indifference claim, I must credit his testimony that Defendant Saltzman encouraged him to masturbate during their cell-side counseling sessions. *See Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 494 (D. Conn. 2015) ("On defendants' motion for summary judgment, the Court credits [plaintiff]'s version of events."); *Brown v. Dubois*, 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017), *report and recommendation adopted*, 2017 WL 2983011 (N.D.N.Y. July 12, 2017) ("The competing evidence rests on the credibility of plaintiff on the one hand and defendants on the other. In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party directs the Court to credit plaintiff's version of events for purposes of this motion.").

But even when viewed in the light most favorable to Jordan, the evidence would not permit a reasonable jury to find in Jordan's favor on his Eighth Amendment deliberate indifference claim against any of the Defendants. This is because Jordan has failed to point to any evidence to support the subjective element of recklessness on the part of any of Mueller, Gonzalez, or Clark.[8] And Saltzman is entitled to qualified immunity on this claim.[9] Because the analysis of this issue is

---

[8] Because this element is dispositive of the Defendants' motion for summary judgment on the Eighth Amendment deliberate indifference claim against Mueller, Gonzalez, and Clark, I decline to examine whether Jordan has carried his burden on the objective element.

[9] Because this issue is dispositive of the Defendants' motion for summary judgment on the Eighth Amendment deliberate indifference claim against Saltzman, I decline to examine whether Jordan has carried his burden on either of the elements of the deliberate indifference claim with respect to Saltzman.

different for Defendants Mueller, Gonzalez, and Clark than it is for Saltzman, I address the two groups of Defendants separately.

**ii. Defendants Mueller, Gonzalez, and Clark**

Jordan's argument regarding the subjective element is centered on the uncontested fact that Defendants Mueller, Gonzalez, and Clark did not believe Jordan's allegations against Saltzman. ECF Nos. 86-5 at 4 ("I am aware that the plaintiff has made the allegation that he had a sexual relationship with Ms. Saltzman. I do not believe this to be true."); 86-7 at 3 (same); 86-8 at 2 (same). Jordan contends that "rather than *believing* Plaintiff and treating his suffering, Defendants by their own admission discredited Plaintiff, helped Defendant Saltzman respond to an internal investigation into his accusations, and allowed her continued access to inmates, including Plaintiff." ECF No. 95 at 20–21. The short answer to this is that nothing in the Eighth Amendment required the Defendants to believe Jordan. It does not follow from the proposition that the *Court*, at summary judgment, must credit Jordan's allegations that these *defendants* had to do so to avoid violating his Eighth Amendment rights.

Jordan does not contend that his allegation was not appropriately and promptly investigated. Jordan specifically reported his allegations of sexual abuse to Defendant Gonzales on August 7, 2020. ECF No. 95-1 ¶ 17. On August 17, 2020, Northern custody staff initiated an investigation into Jordan's allegations and then referred the matter to the DOC PREA unit. *Id.* at ¶ 22.[10] Jordan does not argue that any Defendants failed to report Jordan's allegation when he specifically informed Gonzalez that Saltzman was sexually abusing him. He does not allege that any of the Defendants (besides Saltzman) were witnesses to or learned of the alleged inappropriate

[10] Although Jordan asserts that he "raised his concerns" prior to August 7, 2020, the only evidence in support of this is far too vague to have put Defendants on notice of his allegations. *Id.* at ¶ 17 ("Plaintiff had previously 'implied that something was happening without saying exactly what it was,' including telling Defendant Gonzalez: 'You need to be checking what's going on around here, things are happening.'").

behavior before Jordan specifically reported it to Defendant Clark on August 7, 2020. And the PREA investigation concluded that all of Jordan's allegations were unfounded. ECF No. 95-1 ¶ 26 ("PREA concluded that the plaintiff's allegations were unfounded. (PREA # 20-028). Response: Undisputed."). Nor was there any physical or video evidence supporting Jordan's version of events. In light of all this, no reasonable juror could find that it was reckless for these defendants to disbelieve Jordan's claim.

Jordan complains that Defendants "helped Defendant Saltzman respond to an internal investigation into his accusations," and points to Mueller's declaration that he assisted Saltzman in preparing her paperwork. ECF No. 95 at 21. This fact has little bearing on whether Mueller or Gonzalez or Clark was "criminally reckless" with regard to Jordan's mental health. Jordan also complains that these defendants allowed Saltzman continued access to inmates, including Jordan. *Id.* Mueller's declaration states that he "was not concerned with Ms. Saltzman continuing to work with other inmates. She always worked in a professional manner and did not have any similar issues with other inmates"; and "after the plaintiff made his complaint about Ms. Saltzman, I [Mueller] made the decision that Ms. Saltzman's interaction with the plaintiff, would be limited. As detailed in the treatment notes, she did continue to occasionally provide mental health services to the plaintiff." ECF No. 86-5 at 4. Because Mueller did not believe Jordan's allegations, his decision about Saltzman's contact with inmates, including his decision to limit but not ban her visits with Jordan, was not criminally reckless. Jordan also alleges that after he came forward with the sexual abuse allegation against Saltzman, she shared the fact of his allegation with other inmates, and Defendants improperly dismissed Jordan's reports that Saltzman was sharing that information with other inmates. ECF No. 95 at 21. Again, however, Jordan points to no authority suggesting that these defendants were required to believe that Saltzman was improperly sharing

information with other inmates. Nor does Jordan point to evidence suggesting that refusing to believe him reflected subjective recklessness.

At most, this is evidence of Jordan's mental anguish—and the alleged cause of his mental anguish—and goes to the objective prong of Jordan's deliberate indifference claim, as well as his Fourth Amendment bodily privacy and Eighth Amendment sexual abuse claims against Saltzman. It is not evidence upon which a reasonably jury could find that Defendants were "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," *Estelle,* 429 U.S. at 104.

In light of Jordan's continued receipt of counseling and mental health medication, the PREA investigators' conclusion that Jordan's allegations were unfounded, and the absence of any allegation that his claim was not properly reported and investigated, no reasonable juror could find on this record that Mueller's, Gonzalez's, and Clark's continued treatment of Jordan, or Mueller's permitting Saltzman to provide treatment on a more limited basis, was reckless.[11]

**iii. Defendant Saltzman**

The Court considers the deliberate indifference allegations against Saltzman separately from the other defendants because it must credit Jordan's allegations at this stage. Crediting Jordan's version of events means that the Court must take as fact that she did abuse him and, further, that she knew she was abusing him. The question Jordan presents, then, is whether, given that Saltzman knew she had abused him, her continued treatment of him after he came forward

[11] Although Jordan's Eighth Amendment deliberate indifference claim fails (at least) on the subjective element of the claim, even if it had not, these defendants would be entitled to qualified immunity because no reasonable jury could determine that "no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995) ("[I]f the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.") (internal citation omitted); *see also Grice v. McVeigh,* 873 F.3d 162, 166 (2d Cir. 2017) ("The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'").

with his allegation against her constitutes deliberate indifference to his mental health needs.[12] *See* ECF No. 95 at 22 ("Plaintiff has put forth admissible evidence that the cause of his mental anguish was his continuing unhealthy attachment to Defendant Saltzman stemming from an inherently abusive sexual relationship *and her continuing access to him* and other inmates, which caused him 'distress and anxiety,' including persistent 'suicidal thoughts and plans to commit [suicide].'") (emphasis added).

I exercise my discretion to decide this issue on qualified immunity grounds. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding" the order in which to consider (a) whether the facts that a plaintiff has shown make out a violation of a constitutional right and (b) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.").

Jordan argues that after he reported that Saltzman sexually abused him, she should have cut off all contact with him rather than following her supervisor's instruction to limit her treatment of him. ECF No. 95 at 22 ("Plaintiff has put forth admissible evidence that the cause of his mental anguish was his continuing unhealthy attachment to Defendant Saltzman stemming from an inherently abusive sexual relationship *and her continuing access to him* and other inmates, which

[12] The only issue Jordan briefs on this point concerns his medical treatment after he came forward with his allegation of abuse against Saltzman. ECF No. 95 at 20 ("Defendants do not dispute that Plaintiff suffered from severe anxiety and suicidal thoughts *after* he went public with his allegations against Defendant Saltzman") (emphasis added); *id.* at 21 ("there are factual disputes with regard to the adequacy of Plaintiff's mental health treatment at Northern *after* he filed what Defendants term a 'false report' against Saltzman . . . It is for a jury to determine whether it was reckless to allow Defendant Saltzman back onto the block notwithstanding Plaintiff's accusations") (emphasis added). Therefore, the Court does not analyze any possible deliberate indifference claim in the period Saltzman was allegedly abusing Jordan. *Patane v. Nestle Waters N. Am., Inc.*, 786 F. Supp. 3d 474, 480 (D. Conn. 2025) ("It is particularly well-established in this Circuit that a party who fails to raise an argument in his opposition to a motion for summary judgment forfeits that argument") (internal quotation marks and changes omitted); *Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment. Accordingly, these arguments were waived.").

caused him 'distress and anxiety,' including persistent 'suicidal thoughts and plans to commit [suicide].'") (emphasis added); *id.* at 23 (arguing that because Defendants "continued to counsel Plaintiff for mental health issues without addressing their root cause: his abusive sexual relationship with Defendant Saltzman" Defendants are liable for deliberate indifference and "are therefore not entitled to qualified immunity."); *id.* at 21 ("despite Plaintiff's repeated complaints, Defendant Saltzman 'was allowed to come to work in the block,'").

This argument fails because Jordan has not pointed to, and the Court could not locate, any case from the Supreme Court or Second Circuit holding that a provider who had sexually (or even physically) abused an inmate and then continued to treat him is liable for Eighth Amendment deliberate indifference to his medical needs. *White v. Doe*, 2021 WL 4034164, at *5 (D. Conn. Sept. 3, 2021) ("[A] court must identify the right at issue with an appropriate level of specificity that is particularized to the facts of the case. This is not to say that there must be a prior case involving identical facts or that is directly on point, so long as existing precedent makes clear beyond reasonable debate that what the officer was doing was a violation of the plaintiff's then-recognized constitutional rights."). Because there is no clearly established law indicating that it constitutes deliberate indifference to an inmate's medical needs for a provider to treat an inmate that she has previously sexually abused, Saltzman is entitled to qualified immunity on this claim.[13]

Jordan makes one additional argument in furtherance of his deliberate indifference claim: that Saltzman improperly shared information with other inmates. ECF No. 95 at 21 ("Defendants

[13] Because Saltzman is entitled to qualified immunity on the deliberate indifference claim, I need not decide whether Jordan has raised a genuine dispute of material fact as to whether Saltzman acted with deliberate indifference to his mental health needs. *Pearson*, 555 U.S. at 236–37, 241 (district court judges may exercise their discretion in deciding the order in which to consider whether the facts make out a violation of a constitutional right and whether the defendant is entitled to qualified immunity because "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Doing so conserves judicial resources and accords with the "general rule of constitutional avoidance.").

improperly dismissed Plaintiff's persistent complaints regarding his personal 'business being shared with other [inmates]' and creating 'a security risk,' . . . Defendant Saltzman . . . 'started telling other guys she has relationships with about what [Plaintiff] did.').

Even crediting Jordan's allegations, the evidence he points to does not indicate that Saltzman "disclosed his confidences to other inmates," *id.* at 23, but instead suggests (at most) that Saltzman disclosed the fact that Jordan had accused her of sexual misconduct. *See* ECF Nos. 95-10 at 2 (Jordan's inmate grievance form alleging that Saltzman "started telling other guys she has relationships with *about what I did* and also trying to cover up . . .") (emphasis added); 88 at 57 ("*regarding his recent allegations of misconduct against CSW Saltzman*. 'You guys screwed up. You are letting a person who is accused of sharing information to continue to work.') (emphasis added); *id.* at 70 ("I expressed to you my concern about my business being shared with other IM's. It has happened and this has created a security risk."). Other evidence from Jordan's deposition and mental health records does not shed light on what this "information" or "business" concerned. *See* ECF Nos. 86-12 at 97:18–21 ("A: . . . once the incident took place with another inmate attacking him over her, over some – you know, some information that was given to the other people by her"); 88 at 40 ("You guys are all in collaboration and are threatening my safety and security by trying to transfer me and by telling my business to everyone."); *id.* at 28 ("I broke it off and she told everyone my business").

Even if Jordan did point to evidence demonstrating that Saltzman shared his "confidences" with other inmates, he cites no authority indicating that her doing so would violate clearly established law. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an officer acting under similar

circumstances' was held to have acted unconstitutionally."). Although it is clearly established that a correctional officer may not share an inmate's "excruciatingly private and intimate" "previously undisclosed medical information" absent a "legitimate penological interest in doing so," *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (involving disclosure that inmate was transsexual, which the court described as "confidential medical information"), the Court has been unable to locate any caselaw holding that it violates the Eighth Amendment for a corrections employee to share mere "confidences" with other inmates. *Accord Young v. Superintendent Kadien*, 2010 WL 1909566, at *2 (W.D.N.Y. May 7, 2010) (dismissing Eighth Amendment claim based on allegations that corrections officers were spreading rumors about the plaintiff that were "endangering his mental and physical well being" because verbal harassment "does not constitute the violation of any federally protected right"); *Mitchell v. Igoe*, 2009 WL 3165659, at *11 (N.D.N.Y. Sept. 25, 2009), *aff'd,* 407 F. App'x 536 (2d Cir. 2011) (corrections officers who made other inmates aware of plaintiff's criminal history did not violate inmate's right to privacy). If Jordan's allegation is that Saltzman disclosed to other inmates the fact that he had accused her of sexual abuse, that does not concern confidential information—because he shared his allegation with DOC staff and with other inmates—nor does it concern medical information. If Jordan's allegation is that Saltzman disclosed to other inmates that he had masturbated in front of her, he has cited, and I have found, no authority suggesting that such information was confidential or medical either. To the contrary, if anything, the record suggests that such information would have been grounds for discipline, which suggests that it was not confidential. Because Jordan has not pointed to any clearly established law indicating that Saltzman's sharing of "information" violated his rights, she is entitled to qualified immunity on this claim.

Because I have found that all the Defendants are entitled to qualified immunity on Jordan's deliberate indifference allegations, Defendants' motion for summary judgment is GRANTED as to the Eighth Amendment deliberate indifference claim.

## V. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED with respect to the Fourth Amendment bodily privacy claim against Defendant Saltzman. Defendants' Motion for Summary Judgment is GRANTED with respect to the Eighth Amendment deliberate indifference claim against all Defendants.

Accordingly, the Eighth Amendment deliberate indifference claim is DISMISSED as to all Defendants. Plaintiff's Fourth Amendment bodily privacy and Eighth Amendment sexual abuse claims against Defendant Patricia Saltzman will proceed to trial. The parties are hereby referred to mediation with a U.S. Magistrate Judge. Jury selection is scheduled for April 22, 2026. The Joint Trial Memorandum is due March 30, 2026. A pretrial conference is scheduled for April 14, 2026 at 10:00 a.m.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Hartford, Connecticut

January 28, 2026